UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                     :
UNITED STATES OF AMERICA,                            :        S1 18 CR 390 (PAE)
                                                     :
            - v -                                    :
                                                     :
RONALD BEASLEY,                                      :
                                                     :
                            Defendant.               :
-------------------------------------------------------------X


## SENTENCING MEMORANDUM


Submitted by:
Xavier R. Donaldson, Esq.
Attorney for Defendant Ronald Beasley
1825 Park Avenue, Suite 1102
New York, New York 10035
(212) 722-4900
(212) 722-4966

**Donaldson & Chilliest, LLP**
**1825 Park Avenue, Suite 1102**
**New York, NY 10035**
**212-722-4900**
**212-722-4966**

May 28, 2019

<u>**VIA ECF AND EMAIL**</u>
Honorable Paul A. Engelmayer
United States District Court Judge
Southern District of New York
40 Foley Square
New York, New York 10007
EngelymayerNYSDChambers@nysd.uscourts.gov

Re:   *United Stated v. Ronald Beasley*
17 Cr 0002 (KMK)

Dear Judge Engelmayer:

As this Court is aware, on December 21, 2018 Mr. Beasley, pursuant to a Plea Agreement, pleaded guilty to violating 21 USC Section 846 and 21 USC 841(b)(1)(B).

## SUBSTANTIVE OBJECTIONS TO PSR

PARAGRAPH 58:            Mr. Beasley **was sentenced to 36 months** not 120 months.

PAGE 31, PARAGRAPH 4:   Probation Department again stated that Mr. Beasley was sentenced to 120 months for violating 18 USC 922.

## ANALYSIS OF 18 USC 3553 FACTORS

18 USC Section 3553 calls upon this Court to consider specific factors, including the appropriate Sentencing Range, to impose a sentence on a defendant that is "sufficient but not greater than necessary" to comply with the goals of sentencing. *See, 18 USC Section 3553(a)*. Indeed, any sentence imposed by the Court must be based upon an individualized assessment based upon the unique factors presented in the case at issue. *See, U.S. v. Gall*, 552 US 38, 39 (2007).

Significantly, the United States Sentencing Guidelines merely reflect a "rough approximation of sentences that might achieve section 3553(a)'s objectives". *See,*

*Rita v. United States* 551 US 338, 350 (2007). The Court "may not assume that the Guidelines Range is reasonable." *Gall*, at 50. As the Supreme Court declared in *Nelson v. United States*, 550 U.S. 350 (2009), "[t]he Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Id.*, at 351 (emphasis in original).

After giving both parties an opportunity to argue for whatever sentence they deem appropriate, the District Court should then consider all of the 3553(a) factors to determine whether they support the sentence requested by a party". *U.S. v. Gall*, at 49-50. It is our opinion that after considering all the factors articulated in 18 USC 3553, a sentence of up to **72 months** is "sufficient but not greater than necessary" for Mr. Beasley's participation in this criminal conduct.

(1)     NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY OF
        AND CHARACTERISTICS OF THE DEFENDANT

**Nature and circumstances of the offense**

For a few months in 2018, Mr. Beasley knowingly and voluntarily entered into a conspiracy with others to sell heroin in Bronx, New York. Mr. Beasley was not a leader, organizer or manager of the conspiracy. Moreover, Mr. Beasley did not maintain any premises to store narcotics or carry any firearms or commit any acts of violence in furtherance of the conspiracy. Mr. Beasley has fully accepted responsibility for his actions related to this investigation and has expressed in no uncertain terms his complete remorse for his conduct and the negative effect his conduct has had on the community and his family.

**Notable Characteristics of the Defendant[1]**

Mr. Ronald Beasley was born to teenage parents who were not mentally, economically or spiritually prepared to raise young children. Indeed, when Mr. Beasley was born and for several years thereafter, Mr. Beasley was in a home environment inflicted with parents who were addicted to alcohol and illegal drugs.

Moreover, instead of Mr. Beasley's neighborhood providing a nurturing environment outside of the home, Mr. Beasley's neighborhood was replete with gangs, violence and what he perceived to be "round the clock drug dealing every 10 steps from his front door." This normalized drug dealing, of course, found it's way into Mr. Beasley's home and his father was ultimately arrested, charged and sentenced to prison time as a result of the drug trade. At that time Mr. Beasley lost his father.

---

[1] We would like to rely significantly on the "Background" portion of the attached Mitigation report for this section.

Because Mr. Beasley's father was the "breadwinner" in the home, immediately after his father was sentenced, Mr. Beasley and his family moved throughout various shelters and the homes of other family members. At age 9, Mr. Beasley's family was forced to move from a family member's home back to a shelter. Coincidentally, Mr. Beasley began smoking marijuana at age 9 as a gift from his mentors "standing every 10 steps outside his front door" and the partially used baggies lying around his home. Indeed, at age 9, Mr. Beasley found away to self medicate his trauma.

As fate would have it, Mr. Beasley's family grew but the economic foundation deteriorated and Mr. Beasley found himself as a very young teenager trying to earn money as taught to him by the mentors that were standing "every 10 steps outside of his front door."

Not only did Mr. Beasley's find no tutors, hugs, or educational encouragement from the neighborhood mentors, Mr. Beasley found no genuine, caring support at any of the schools he attended. Consequently, when attending school, Mr. Beasley acted as the "class clown" for several years in order to mask his learning disabilities and attendant trauma. It is indeed hard to imagine a child feeling the need to act as the "class clown" simply because he is not getting the care he needs to help him learn and be a successful part of society.

By the time Mr. Beasley was thirteen (13) years old, he was getting arrested for attempting to make money to provide for his family. At age fifteen (15) he literally believed that he had to be a father to his young siblings because his mother was still addicted to narcotics and his father simply was not around the home to provide for them. Unfortunately, a fifteen (15) year old without proper guidance, without proper education, smoking marijuana on a daily basis and mentored by people "every 10 steps outside of his front door" was doomed for failure and destined to be another penal statistic. Indeed, according to Mr. Beasley, his reality was that "every neighborhood he's every lived in was full of drugs...after a while you don't think twice about them." Unfortunately, Mr. Beasley's birth lottery ticket was a reality of drugs, violence, untreated trauma and poor education that was the direct cause for Mr. Beasley being at the steps of this Courthouse.

Mr. Beasley's new reality is that he has two (2) very young children ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮from a six (6) year relationship with Shanova Fuller. Mr. Beasley has informed the undersigned that his criminal activity has ceased and his primary goal is to serve his time, come home and legally provide for his children and Ms. Fuller.

(2)      NEED FOR THE SENTENCE IMPOSED

**Reflect seriousness of the offense, promote respect for law & just punishment**

Mr. Beasley pleaded guilty to violating 21 USC Section 846 and 21 USC 841(b)(1)(B). Consequently, Mr. Beasley is facing an incarceratory sentence of 5 – 40 years followed by a minimum of four (4) years of supervised release. Pursuant to the plea agreement, Mr. Beasley has a Level 27 with a Criminal History Category of VI. Consequently, Mr. Beasley's United States Sentencing Guidelines Range is 130 – 162 months imprisonment but his statutory minimum is 60 months.

Mr. Beasley understood this consequence and fully accepted his responsibility for his conduct and fully acknowledges that he assisted and participated in criminal conduct for absolutely no legitimate reason except financial gain to assist his struggling family. For that he has consistently expressed regret.

There is, however, no allegation of Mr. Beasley committing violence in relation to or in furtherance of this conspiracy. Moreover, there is allegation that Mr. Beasley maintained any management role in the conspiracy or managed a stash house related to the conspiracy.

While the government considers Mr. Beasley a second tier member of this multi-tier conspiracy, Mr. Beasley was actually simply a regular street level dealer of narcotics as indicated in his prior arrests. He did not amass large amounts of money. Any amount money he secured directly corresponded to selling $5.00/$10.00 bags of heroin and then providing some essentials for his children and the mother of his children. He did not live in a large apartment or home. He does not own expensive jewelry or clothing. Indeed, as a participant in this conspiracy, Mr. Beasley basically gained "street level" payment but exposed himself to significant prison time.

He was not a manager or supervisor. He did not recruit any persons into the conspiracy. He did not travel out of state to distribute any narcotics for the conspiracy. And he voluntarily participated in the conspiracy for a short time and only after his legal employment ceased and he could not find further employment.

While we agree that Mr. Beasley has a criminal record and was on parole when he joined this conspiracy, a **sentence not exceeding 72 months**, would be "sufficient but not greater than necessary" to comply with our system's individualized sentencing goals related to **his conduct** in this matter and would be within the realm of reasonableness related to other previously sentenced co-defendants.

## Afford adequate deterrence to criminal conduct

As indicated earlier, Mr. Beasley completely accepts and understands the seriousness of this crime. It is our belief that because of his drug history, educational set backs, early family trauma and current family support he is a good candidate not to recidivate.

Indeed, there is no real doubt that Mr. Beasley's recent embark on criminal behavior was directly related to his irrational desire to financially support his family via the unlawful narcotic trade. Specifically, Mr. Beasley had several low paying jobs prior to joining this conspiracy and ultimately lost all those jobs.  Consequently, unlike other members of this conspiracy, Mr. Beasley actually tried to find other lawful work prior to getting involved in this conspiracy.  Indeed, he actually maintained a job for months prior to joining this conspiracy.  Unfortunately, his lawful employment ceased and he unsuccessfully tried to find other legal streams of legal employment. Faced without any prospects of employment and a new young child, Mr. Beasley made the unfortunate decision to sell narcotics as part of this conspiracy and has regretted every minute of his decision.  Indeed, based upon conversations with Mr. Beasley, his venture into this conspiracy was supposed to be temporary and in fact he was not too successful while in the conspiracy.[2]  A sentence of **up to 72 months**, will ensure that Mr. Beasley is not at the steps of a courthouse as a criminal defendant ever again.

We will note that a sentence of **up to 72 months** would be higher than any prior sentence Mr. Beasley has received and would thus serve as a significant deterrent to future criminal behavior.[3]  Moreover, this will be the first time that Mr. Beasley has been away from his youngest child for an extended period of time which will also serve as a significant deterrent to any future conduct as his incarceration would be more punitive than in the past because he has a very young child whom he was providing daily care.

Moreover, Mr. Beasley has shown a commitment to structure and determination. While incarcerated at MDC, he has grown past criminal conduct and fully understands the significance of the legitimacy of his associations. Notably at MDC, Mr. Beasley has maintained employment, received several certificates including  but not limited to an "Alternative to Drug Dealing Workshop" and he has not received a single disciplinary infraction.

Additionally, Mr. Beasley endured extremely harsh and inhumane living conditions during the winter of 2019 when there was a power outage at MDC rendering the facility without heat and hot water for several days and requiring a 24 hour lock down.  For approximately seven (7) days, Mr. Beasley was in a freezing

---

[2] Based upon the discovery reviewed, there were times that Mr. Beasley simply did not or could not sell any narcotics.

[3] The PSR at paragraph 58 erroneously indicates that Mr. Beasley received a 120 month sentence for violating 18 USC 922.  Thereafter, the Probation Department suggested a sentence of 120 months arguing that Mr. Beasley should not be sentenced to less than his previous sentence in the Southern District of New York (SDNY).  Mr. Beasley, actually was sentence to thirty-six (36) months for his prior SDNY case and therefore a sentence on this matter of up to 72 months would be considerably higher than any of his last criminal sentences and assuredly serve as a deterrent to any future criminal conduct by Mr. Beasley.

cell with a person who was not provided his psychological education causing Mr. Beasley severe anxiety and fear.  Mr. Beasley was also unable to take a hot shower or use hot water.  Mr. Beasley stayed warm by sleeping in multiple layers of clothing and wrapping himself in whatever additional layers he could find.

Furthermore, "it is well established that antisocial and criminal activity increases during adolescence, peaks around age 17... and declines as individuals enter adulthood." *See, Gary Sweeten, et al. "Age and the Explanation of Crime Revisited"* 42 J. Youth & Adolescence 921 (2013).  Mr. Beasley is thirty-eight (38) years old and will not be released until he is in his forty's.  Thus, it is clear that by the time Mr. Beasley is released, Mr. Beasley will have likely aged out of criminal behavior.

We appreciate the Government's anticipated argument that Mr. Beasley has a significant criminal history and participated in a drug conspiracy that provided poison to the community.  For that, Mr. Beasley should be punished, fully accepts responsibility for his actions and has been extremely remorseful and sincere about his desire to make better decisions and legally provide for his family. A sentence above **72 months** however, is more than necessary for **his individual conduct** related to this conspiracy.

**Protect the public from further crimes of the defendant**

Since his arrest, Mr. Beasley has had regular visits from his family, obtained no disciplinary tickets while incarcerated and has been as productive as possible by earning certificates and remaining employed while at the Metropolitan Detention Center. At this juncture, Mr. Beasley is not a danger to society at all.  Mr. Beasley's foray into the criminal world has ended and a brand new focus on what's actually important in life has grown indelibly attached within him.  There is simply no doubt that Mr. Beasley is a good candidate not to recidivate. A sentence **up to 72 months** would surely protect the public from any further criminal activity by Mr. Beasley.

**Provide defendant with needed educational, vocational, medical care or other treatment**

A **sentence up to 72 months** will also allow the Court to order vocational, educational training as well as any drug treatment programs that he qualifies. Accordingly, we are asking the Court to take this into consideration when sentencing Mr. Beasley and are suggesting that the Court strongly urge the Bureau of Prisons to allow Mr. Beasley to participate in any educational, vocational or drug treatment programs to which Mr. Beasley qualifies.  Moreover, we are asking the Court to suggest to the Bureau of Prisons that Mr. Beasley be housed as close to New York City to maximize family visits which will undoubtedly foster rehabilitation and ensure that Mr. Beasley has a smoother transition upon being released from prison.

**Avoid Sentencing Disparities**

As the Court is aware, this is a multi-defendant conspiracy involving at least fifteen (15) other co-defendants. While we do not have all the information related to the codefendants, we are asking the Court to consider the below the sentences of some of Mr. Beasley's codefendants when sentencing Mr. Beasley:

*Co Defendant Freddie Torres*:

**Freddie Torres,** is considered a career offender and being held responsible for 400 – 1.2 kilograms of heroin containing fentanyl. According to the Government, during the course of the investigation, Mr. Torres made seven (7) sales of heroin. Additionally, and according to the Government, Mr. Torres has violated parole in the past. Mr. Torres was sentenced to **72 months**.  Mr. Beasley is distinguished from Mr. Torres in that Mr. Beasley is not a "career offender" and made less sales during the conspiracy than Mr. Torres.  Additionally, Mr. Beasley participated in the conspiracy for a shorter period than Mr. Torres.

*Co Defendant Alejandro Rodriguez*:

**Alejandro Rodriguez,** has a Criminal History Category of IV and a Guidelines Range of 121-151 months.  It also appears that Mr. Rodriguez has 20 prior criminal convictions some of which included armed robbery. Mr. Rodriguez also allegedly sold narcotics to members of Tier 3 (*Gov't submission, p. 3*).   Moreover, when Mr. Rodriguez was arrested it is alleged that he possessed 658 glassines of heroin. Mr. Rodriguez was sentenced to **66 months.**  Mr. Beasley is distinguished from Mr. Rodriguez in that Mr. Beasley does not have 20 prior criminal convictions, does not have prior convictions for armed robbery and was not in possession of any narcotics when he was arrested. Moreover, it appears that Mr. Rodriguez may have participated in the conspiracy longer than Mr. Beasley.

*Co Defendant Aaron Carter*:

**Aaron Carter,** has a criminal history category of III and a Guidelines Level of 108 – 135 months. According to the government Mr. Carter recruited or "brought three other people into the Hartley DTO: Johnny Mora, Antonio Mora and Gregory Carter." *Govt submission, p. 3*. Mr. Carter was sentenced to **84 months**. Mr. Beasley is distinguished from Mr. Carter in that Mr. Beasley did not recruit anyone into this conspiracy and participated in the conspiracy for a shorter time than Mr. Carter.

*Co Defendant Hector Sanchez*:

**Hector Sanchez,** has a criminal history category of IV and is being held responsible for "between 12 and 36 kilograms of heroin mixed with fentanyl... with a Guidelines Range of 188 – 235 months" *Gov't sentencing submission, p. 3*. Moreover, according to the Government, while Mr. Carter was selling heroin for the

conspiracy, he was also stealing dirt bikes from Pennsylvania and re-selling them in the Bronx. *Gov't submission, p. 3.* Mr. Sanchez was **sentenced to 120 months.** Mr. Beasley is distinguishable from Mr. Sanchez in that Mr. Sanchez is being held responsible for at least 12x more heroin than Mr. Beasley and was committing different crimes while also participating in this conspiracy.

<u>Co Defendant Christopher Simon</u>:

**Christopher Simon** is being held accountable for the distribution of at least 400 – 1.2 kilograms of heroin mixed with fentanyl. Mr. Simon was involved in the conspiracy for a longer period than Mr. Beasley. Mr. Simon was sentenced to **66 months.** Mr. Simon and Mr. Beasley are probably the most closely related in that they both were believed to have no more than two (2) sales of heroin to individuals working with law enforcement during the conspiracy and they both are being held responsible for 400 – 1.2 kilograms of heroin. Mr. Simon, however, participated in the conspiracy longer than Mr. Beasley.

<u>Co Defendant Edward Davies</u>:

**Edward Davies,** sold heroin to eight individuals working with law enforcement during the conspiracy. Additionally, Mr. Davies has twenty-nine (29) prior criminal convictions. Mr. Davies was sentenced to **60 months.** Of course Mr. Beasley does not have twenty-nine (29) prior criminal convictions and participated in the conspiracy for less time than Mr. Davies.

<u>Co Defendant Gregory Carter</u>:

**Gregory Carter,** is being held responsible for 4 – 12 kilograms of heroin mixed with fentanyl. He is also alleged to have transported heroin to Connecticut during the conspiracy. Additionally, and according to the government, approximately three (3) months before his arrest, Mr. Carter committed domestic violence against his girlfriend including assault, criminal mischief and vandalism. *Gov't submission, p. 5.* Mr. Carter has a Criminal History category of I with a Guidelines Range of 108 – 135 months. Mr. Carter was sentenced **to 75 months.** Mr. Beasley is distinguished from Mr. Carter in that he is not being held responsible for the same amount of narcotics, he was not in the conspiracy as long as Mr. Carter and he was not committing other criminal conduct while participating in the conspiracy.

## CONCLUSION

We believe that ***an incarceratory sentence up to 72 months***, which is significantly higher than Mr. Beasley's last incarceratory sentence, is the appropriate sentence that will ensure that Mr. Beasley is not again inside of any criminal courthouse as a defendant.

Indeed, it cannot be overstated that the following applies to Mr. Beasley:

- Mr. Beasley is not alleged to have committed any violence related to or in furtherance of this federal conduct;
- Mr. Beasley's childhood trauma and educational deficiencies played a significant role in his participation in this conspiracy;
- Mr. Beasley will have strong family support upon exiting prison;
- Mr. Beasley was not in the conspiracy for an extended period of time;
- Mr. Beasley did not obtain any significant value for his participation in the conspiracy;
- Mr. Beasley did not manage or supervise a stash house;
- Mr. Beasley did not recruit anyone to join the conspiracy;
- Mr. Beasley was not in possession of any narcotics when arrested;
- Mr. Beasley's use of narcotics played a pivotal role in his decision to participate in the sale and distribution of narcotics; and
- A sentence of up to 72 months would avoid any unwarranted sentencing disparities.

Consequently, because of the above, we believe a sentence of ***up to 72 months*** of incarceration is a sufficient but not greater than necessary sentence for Mr. Beasley related to his admission of guilt in this matter.


Respectfully submitted,

/s/ Xavier R. Donaldson

Xavier R. Donaldson
Attorney for Ronald Beasley


Attachments
cc:     Assistant U.S. Attorney